# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

ENRIQUEZ MARTINEZ,

      Plaintiff,

v.                                          Civ. No. 18-165 MV/GJF

NANCY A. BERRYHILL, *Acting
Commissioner of the Social Security
Administration*,

      Defendant.

## PROPOSED FINDINGS AND
## RECOMMENDED DISPOSITION

THIS MATTER is before the Court upon Plaintiff Enriquez Martinez's ("Plaintiff's") "Motion to Reverse and/or Remand" ("Motion"). ECF 24. The Motion is fully briefed. *See* ECFs 30 (Commissioner's Response), 31 (Plaintiff's Reply). On August 14, 2018, U.S. District Judge Martha Vazquez referred the above-captioned cause to this Court for recommended findings and disposition. ECF 18. Having meticulously reviewed the entire record and the parties' briefing, the Court recommends that the Motion be **DENIED** and the Administrative Law Judge's ("ALJ's") ruling be **AFFIRMED**.

## I.   FACTUAL BACKGROUND

Plaintiff was born in 1974. Administrative Record ("AR") 141. He completed schooling through the eighth grade and in 1992 earned his General Education Development ("GED") diploma. AR 31, 171. He testified in January 2017 that he lived with his then 61-year-old mother and his two daughters, then ages ten and six, who were jointly adopted by Plaintiff and his mother. AR 31, 42.[1] Plaintiff worked as a warehouse manager from 1994 until September 2013,

---

[1] Plaintiff testified that this four-person household is supported by his mother's pension and also by a government subsidy of $998.00 per month for the two adopted children. AR 31-32; *but cf.* Pl.'s "Application to Proceed in District Court Without Prepaying Fees or Costs" at 1-2, ECF No. 2 (Plaintiff, in his application to have the $400 filing and

performing both "heavy, semi-skilled work" and "light, skilled work" in this position. AR 20, 45, 162, 171. During a time of cutbacks, Plaintiff's employer decided that two supervisors were unnecessary, and Plaintiff was consequently laid off from this job in September 2013. AR 33-34, 40.[2] Approximately one year later, Plaintiff applied for "a Period of Disability and Disability Insurance Benefits" with the Social Security Administration ("SSA"), claiming that his inability to work began on September 5, 2013, the day he stopped working. AR 102, 141, 159, 170.[3] Plaintiff claimed that he was disabled due to three conditions: diabetes, high blood pressure, and arthritis. AR 51, 141, 170.

In April 2015, the SSA denied Plaintiff's initial claim, finding that Plaintiff's alleged impairments from these conditions were "non-severe," "inconsistent and disproportionate" with the evidence, and "[did] not result in significant limitations" in his ability to work. AR 54-56. In July 2015, upon Plaintiff's request for reconsideration, the SSA again denied Plaintiff's claim. AR 64. It found, however, that Plaintiff's obesity qualified as a "severe" impairment and concluded that Plaintiff had "some limitations" in his ability to work—although nothing severe enough to keep him from working, including at his previous job. AR 65.

Plaintiff then requested a hearing, which was held before ALJ James Bentley in January 2017. AR 27, 82. Assisted by counsel, Plaintiff testified at the hearing, as did Melissa Brassfield, a vocational expert. AR 30, 44. In February 2017, "after careful consideration of all of the

administrative fee waived, declaring—under penalty of perjury and at the risk of having this claim dismissed—that he has *no* sources of income, including from any public assistance programs or any other sources).

[2] Plaintiff also testified that before he was "let go" he essentially never got up from his desk, fell asleep at his desk a few times, and would get sick and miss two to three days of work a month. AR 34. He speculated that such performance, which he attributed to his medical condition, could have contributed to the decision to lay him off. *Id.*

[3] Plaintiff also immediately applied for and received unemployment benefits for approximately the next six months. AR 40-41. When asked whether he remembered holding himself out as "ready, willing, and able to return to work" in order to qualify for unemployment benefits, Plaintiff testified as follows: "I might have. I'm not sure. I was putting [out] applications, but I didn't think I was going to be able to." *Id.*

evidence," the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act. AR 14, 22.[4]

Plaintiff then sought relief with the SSA's Appeals Council. AR 136. In January 2018, the Appeals Council found, among other things, no abuse of discretion by the ALJ, no error of law, and no lack of substantial evidence. AR 1. It therefore denied Plaintiff's request to review the ALJ's decision and affirmed that decision as the Commissioner's final decision. *Id.* Plaintiff timely petitioned this Court for relief in February 2018, alleging that he was "severely and irreparably disabled by multiple impairments" and that the Commissioner's final decision was erroneous. Pl.'s Compl. 2-3, ECF 1.

## II. PLAINTIFF'S CLAIMS

Plaintiff first claims that the ALJ erred by not performing a complete "function-by-function assessment" of Plaintiff's physical limitations pursuant to Social Security Ruling 96-8p. Pl.'s Mot. 14-15. Second, Plaintiff asserts that the ALJ erred by assigning "diminished weight" to the opinion of Plaintiff's treating physician. *Id.* at 15. Third, Plaintiff contends that the ALJ erred by not "properly consider[ing]" Plaintiff's testimony about his symptoms. *Id.* at 16. Finally, Plaintiff alleges that the ALJ erred by not "properly assess[ing]" his obesity. *Id.*

## III. APPLICABLE LAW

### A. Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[5] The Court's review of that final agency decision is both

---

[4] A more in-depth discussion of the ALJ's decision appears in Section IV, *infra.*

[5] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994).

legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show . . . [he or she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, *shall* be conclusive." 42 U.S.C. § 405(g) (emphasis added). Substantial evidence does not require a preponderance of evidence, but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). An ALJ's decision, however, "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988)).

A court should meticulously review the entire record but should neither "reweigh the evidence nor substitute [its] judgment for that of the agency." *Langley*, 373 F.3d at 1118 (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)); *Hamlin*, 365 F.3d at 1214. A court is to "review only the *sufficiency* of the evidence, not its weight." *Oldham v.*

*Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Consequently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands and Plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

### B. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The SSA has devised a five-step sequential evaluation process to determine disability. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "he is not presently engaged in substantial gainful activity," (2) that "he has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a

listed impairment[6] or (4) that "the impairment or combination of impairments prevents him from performing his past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant retains sufficient "residual functional capacity" ("RFC") "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146, n.5.

## IV. ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

In his February 2017 written decision, the ALJ affirmed that he "carefully reviewed the facts of [Plaintiff's] case," "all the evidence," and "the entire record" before him. AR 11, 14, 16. In his "Findings of Fact and Conclusions of Law," the ALJ discussed the evidence and opinions that led to his decision. AR 16-22.

### A. Steps One through Three

At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since September 5, 2013, the alleged onset date of his disability. AR 16.[7] At step two, the ALJ found that Plaintiff had three severe impairments: type 2 diabetes, hypertension, and obesity. *Id.* In analyzing Plaintiff's gastroparesis, the ALJ found that the evidence showed no "consistent symptoms," such as weight loss, that corresponded to this condition. *Id.* Although Plaintiff testified, in response to the ALJ's questioning, that he had to lie down after eating "until [the food] goes down" so that he would not get sick, the ALJ nonetheless found that Plaintiff's gastroparesis was not severe because it caused no more than "a minimal limitation" of Plaintiff's ability "to do

---

[6] If the claimant can show that he has a listed impairment, he will be found to be disabled and no further steps will be analyzed. 20 C.F.R. § 404.1520(a)(4)(i-iv). Otherwise, if no listed impairment can be shown, the analysis moves on to step four. *Id.*

[7] As explained in note 3, *supra*, Plaintiff could not recall affirming—shortly after he stopped working on September 5, 2013—that he was nevertheless "ready, willing, and able to return to work" in order to qualify for the six months of unemployment benefits he received.

basic work activities." AR 16 (citing 20 C.F.R. § 404.1520(c)); AR 35. Likewise, the ALJ found that Plaintiff's alleged "joint and back pain" were not severe because the record contained no "diagnosis relating to joint pain or back pain, except as may be attributed to diabetes." AR 16-17.[8]

At step three, the ALJ found that no impairment or combination thereof satisfied the criteria of a listed impairment. AR 17. He observed that neither diabetes, hypertension, nor obesity were classified under a specific listing. *Id.* Instead, following the established guidelines, he evaluated diabetes and hypertension through their effects on *other* "body systems" and found that they caused no "listing level severity" on Plaintiff's other body systems. *Id.* Similarly, in finding no listed impairment, the ALJ also affirmed that he made no "assumptions about the severity or functional effects of obesity"—but rather evaluated Plaintiff's obesity, particularly its effects on "other impairments," in the context of the overall "information in the case record." *Id.* (citing Social Security Ruling (SSR) 02-01p). He further stated that his evaluation of obesity under SSR 02-01p included the application of internally-referenced guidelines, *id.* (citing 20 C.F.R., Subpt. P. App. 1, §§ 1.00(Q), 3.00(I), 4.00(F)), which assisted his evaluation of the "combined effects of obesity with musculoskeletal impairments" and the "cumulative effects of obesity" on the cardiovascular system. §§ 1.00(Q), 4.00(F).

**B. Residual Functional Capacity**

Before performing the step four analysis, in which the ALJ considers whether a claimant can perform past work, the ALJ must first determine the claimant's RFC. 20 C.F.R.

---

[8] One month before the hearing, Plaintiff's primary care physician wrote a one-page letter, on company letterhead and addressed to no particular individual or organization, stating Plaintiff had been diagnosed with "several medical problems," including "chronic back and large joint pain," that made it "impossible" for him to "perform any future employment." AR 356. Aside from this *letter*—which claimed such a diagnosis had previously occurred—there were no *medical records*, or other information in the record, that actually contained "a *diagnosis* relating to joint or back pain" outside of pain attributable to diabetes. AR 16-17 (emphasis added); *see* AR 1-356.

§ 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity.").[9] Here, the ALJ found that Plaintiff could perform "light work," as defined in the regulations, with some additional limitations. AR 17-18. Specifically, the ALJ found that Plaintiff's RFC consisted of the following:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: he requires a sit/stand option, defined as a brief positional change from sitting to standing and vice versa with no more than one change in position every half hour and without leaving the work station so as not to diminish pace or production; he would be limited to frequent but not constant handling and fingering bilaterally; he would be unable to operate foot controls; he would be unable to climb ladders, ropes, or scaffolding; and he would need to avoid unprotected heights and dangerous moving machinery.

AR 17-18. In making these findings, the ALJ affirmed that he considered "all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence" and further affirmed that he considered the opinion evidence. AR 18.

The ALJ found that Plaintiff's "medically determinable impairments" could reasonably have caused the alleged symptoms. AR 19. He explained, however, that Plaintiff's "statements concerning the *intensity, persistence and limiting effects* of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* (emphasis added). As described below, the ALJ discussed in his RFC assessment the evidence supporting his findings. AR 17-20.

### 1. Plaintiff's Alleged Symptoms and Limitations

The ALJ first began his analysis by reviewing Plaintiff's claims regarding his own symptoms and limitations. AR 18. The ALJ initially noted that Plaintiff recorded his height as 6'1" and his weight as 330 pounds as part of his disability application. *Id.* The ALJ's review of

---

[9] *But cf. Winfrey*, 92 F.3d at 1023 (describing the RFC determination as technically the first part of step four).

Plaintiff's alleged symptoms included Plaintiff's assertions of (1) numbness in his hands, feet, and legs; (2) sensitive hands and, when not lying down, swollen feet; (3) fatigue, dizziness, and daily headaches; (4) pain, including in his back, nerves, and "all his joints;" and (5) "heart palpitations and shortness of breath." *Id.*

The ALJ's review of Plaintiff's alleged limitations included Plaintiff's testimony that he (1) had to "lie down half of the day due to pain and dizziness," (2) "could not grip things," (3) "had balance issues, particularly after standing or walking," (4) "could stand about half an hour," and (5) "could sit for an hour before needing to change positions due to back pain and numbness in his legs." AR 18, 33, 35, 38. He also noted Plaintiff's initial written assertions that his impairments affected his ability to "stand more than ten minutes" and "sit more than half an hour." AR 18, 188.[10]

After reviewing Plaintiff's symptoms and limitations, the ALJ noted that Plaintiff received unemployment benefits for approximately six months after he was "fired" from his last job. AR 18; *see also supra*, note 3 (Plaintiff's inability to recall holding himself out as "ready, willing, and able to return to work" in order to receive unemployment benefits).

### 2. *Objective Medical Evidence*

The ALJ discussed eight of Plaintiff's visits with his primary care physician, Michael Montoya, MD. AR 18, 274, 293. The ALJ first noted that in August 2013—less than one month before Plaintiff's alleged disability onset—Plaintiff reported to Dr. Montoya that he was "feel[ing] better overall." AR 18, 298. The ALJ observed that the result of Dr. Montoya's examination of Plaintiff on this date was overall normal, noting that Plaintiff had "no numbness or tingling," a normal gait, and no complications with his diabetes or hypertension. AR 18-19 (citing AR 298-

---

[10] Plaintiff also alleged that his impairments "affected his ability to lift, … squat, bend, reach, kneel, climb stairs, . . . use his hands," or walk more than one block. AR 18, 183, 188.

99). The ALJ then reviewed three of Plaintiff's visits with Dr. Montoya in 2014,[11] two in 2015,[12] and two visits in 2016,[13] all of which "generally showed little" or resulted in "unremarkable" findings. AR 19.

The ALJ then discussed four of Plaintiff's visits with a cardiologist in 2016. AR 19. About Plaintiff's first visit, the ALJ noted that Plaintiff "denied any symptoms, such as headaches, shortness of breath, or chest pain" and that his examination "was unremarkable." *Id.* (citing AR 344-46). At subsequent visits, Plaintiff participated in an exercise stress test and was given a new prescription for hypertension. *Id.* (citing AR 342-43). In addition, the cardiologist observed that "symptomatically, [Plaintiff] was doing well, with no shortness of breath or chest pain, although he had heart palpitations." *Id.* (citing AR 333-35). He again classified the examination of Plaintiff as "unremarkable" and found that Plaintiff had "normal gait and intact sensation." *Id.* (citing AR 333-35).

After discussing these eight visits with Dr. Montoya and four visits with a cardiologist— and after "careful consideration of the *entire* record"—the ALJ found that "[t]he record was devoid of any complaints or findings of numbness in [Plaintiff's] extremities." AR 17, 19. In addition, he found that "[w]hile the record did show diabetes mellitus and hypertension in various stages of control, the record typically noted [Plaintiff] was *asymptomatic*, and examinations *generally*

---

[11] These 2014 visits occurred in March (with the ALJ again noting "no numbness or tingling" and also full range of motion, but some "pain in the lumbar spine" when doing "straight leg raising"), July (noting similar symptoms as previous visits) and December (noting tenderness in hands and joints, mildly tender lumbar area, and that Plaintiff was neurologically intact). AR 19 (citing AR 300-01, 304-05, 315-16).

[12] These 2015 visits occurred in August (with the ALJ noting "trace pedal edema" and Plaintiff's difficulty improving his hypertension or blood pressure) and December (again noting a normal gait). AR 19 (citing AR 323-24, 327-28).

[13] These 2016 visits occurred in July (with the ALJ noting an "unremarkable examination" and improved blood sugars, but dizziness with activities and not much improvement in hypertension) and November (again noting an "unremarkable examination"). AR 19 (citing AR 349-52, 354).

*showed little.*" AR 19 (emphasis added) (citing AR 298-301, 304-05, 315-16, 323-24, 327-28, 333-35, 339, 344-46, 349-51).

The ALJ also reviewed the medical evidence of Plaintiff's obesity. AR 18-19. For example, he observed that Plaintiff's body mass index ("BMI") was 43 in late 2013 when he applied for disability benefits, given his reported height of 6'1" and weight of 360 pounds. AR 18 (citing AR 170). He also observed that Plaintiff's BMI was 43.9 in March 2014 and then approximately 46 in November 2016. AR 19 (citing AR 300, 352). The ALJ affirmed that he considered the record evidence in evaluating obesity's possible effects on other impairments, AR 17 (citing SSR 02-01p; 20 C.F.R., Subpt. P. App. 1, §§ 1.00(Q), 3.00(I), 4.00(F)), and that Plaintiff's obesity was indeed "supported by the record." AR 19 (citing AR 333-35, 351-52). Even considering this evidence of Plaintiff's obesity, the ALJ nevertheless found that "[i]n all, however, [Plaintiff's] alleged symptoms and limitations are not consistent with the objective medical evidence." *Id.*

### 3. Opinion and Other Evidence

The ALJ next reviewed the opinion evidence of two state agency physicians who reviewed Plaintiff's disability application. In April 2015, one state agency physician opined that Plaintiff's alleged impairments were "non-severe," "inconsistent and disproportionate" with the evidence, and did not significantly limit his ability to work. AR 20, 54-55. In July 2015, however, another state agency physician found that Plaintiff's obesity was "severe" and opined that Plaintiff should be limited to "medium work," along with some minor postural limitations (e.g., only "frequent" stooping, or climbing of ramps, stairs, ladders, ropes, or scaffolds). AR 20, 62-63. The ALJ gave Plaintiff the benefit of the doubt, assigned "diminished weight" to these two opinions, and instead accorded Plaintiff an even *greater* restriction by limiting his RFC to "light work," with some

additional limitations as described above. AR 17-18, 20. He did this because (1) these experts did not have a chance to examine Plaintiff, (2) Plaintiff had "significant, additional treatment with a cardiologist," and (3) their opinions appeared to be "inconsistent with some of the objective medical evidence that suggested more limitations, such as reports of [Plaintiff's] uncontrolled hypertension and diabetes." AR 20 (citing AR 323-24, 339, 344-46, 351-54).

The ALJ then reviewed the opinion of Dr. Montoya, Plaintiff's primary care physician. One month before the hearing, Dr. Montoya wrote a one-page letter, listing Plaintiff's previous medical history and then concluding that it was "impossible" for Plaintiff to "perform any future employment:"

> [Plaintiff] has been my patient for several years. During this time, [Plaintiff] has been diagnosed with several medical problems:
>
> > PMH [Past Medical History]: HTN [hypertension]
> > DM [diabetes mellitus], 2010
> > CCY [cholecystectomy, i.e., gallbladder removal] 2011
> > influenza vaccine 2011, 2014/16
> > cardiac screen 2016
> > tdap [tetanus, diphtheria, and pertussis vaccination] 2014
> > gastroparesis from [diabetes]
> > chronic back and large joint pain
>
> [Plaintiff] has been trying to adjust to these diagonses [sic] with exercise and medical therapy. However, the number of medical problems that [Plaintiff] is confronting are making it impossible to function well enough to perform any future employment.
>
> [Plaintiff] has daily problems regarding joint pain and back pain that only allow him to walk or stand for 30 minute intervals before changing to a sitting position for 1 to 2 hour [sic] and then lying down for another 1 to 2 hours. He cannot exert himself due to an unusual blood pressure response that now requires 4 medications to control. He is at risk for chest pain and fatigue.
>
> [Plaintiff] has had neuropathy in the hands and feet giving him numbness and pain throughout. And he also has neuropathy in the abdomen that makes is [sic] digestive track slow and cause pain.

AR 356. The ALJ found Dr. Montoya's statement to be "somewhat inconsistent with the treating records, which fail to mention *any* problems with numbness in [Plaintiff's] hands and feet." AR 20 (emphasis added) (citing AR 348-54). The ALJ also found that "the record does not show that any impairment affecting the joints or back has been diagnosed, and the record contained no imaging." *Id.* Lastly, the ALJ noted that Dr. Montoya's opinion concerning Plaintiff's hypertension "has some support in the records, although symptoms were typically mild." *Id.* (citing 349-50). Consequently, the ALJ assigned Dr. Montoya's opinion "diminished weight." *Id.*

The ALJ observed that not only were the "objective findings" in the medical records minimal, but that Plaintiff own complaints regarding his symptoms were also minimal. *Id.* (ALJ observing that "[w]hile the claimant has diabetes mellitus, hypertension, and obesity, objective findings were minimal, and complaints in the record as to his symptoms were limited"). Thus— after considering Plaintiff's alleged symptoms, the objective medical evidence, the opinion evidence, Plaintiff's lack of complaints regarding his symptoms, and "the *entire* record"—the ALJ concluded that "[i]n all, the evidence supports the [RFC] above." AR 17-20 (emphasis added).

### C. Steps Four and Five

At step four, given the RFC described above, the ALJ found that Plaintiff was unable to perform his past relevant work as a warehouse manager. AR 20 (classifying Plaintiff's previous employment as both "heavy, semi-skilled" and "light, skilled" work). At step five, however, the ALJ found that Plaintiff was able to successfully adjust "to other work that exists in significant numbers in the national economy," e.g., cashier, office helper, and small product assembler. AR 22. Consequently, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 5, 2013, through the date of [the ALJ's] decision." *Id.*

## V. ANALYSIS

### A. ALJ Did Not Err in Formulating Plaintiff's RFC

Plaintiff claims that the ALJ erred in formulating his RFC by not performing a proper "function-by-function assessment" under SSR 96-8p. Pl.'s Mot. 14-15. Plaintiff argues that the ALJ's discussion of his "functional limitations" should have been more thorough because obesity and diabetes are complex conditions. *Id.* at 15. Plaintiff's Motion, however, does not identify what functional limitations might have been inadequately discussed, how the ALJ should have discussed them differently, or how such omissions would have prejudiced Plaintiff. *Id.* Nevertheless, Plaintiff's Reply clarifies that he was alleging reversible error in the ALJ's failure to perform "an explicit function-by-function analysis" of the following limitations: (1) the limitation expressed in Dr. Montoya's opinion that Plaintiff had to "lie down for 1-2 hours after sitting for 1-2 hours" and (2) the limitation expressed in Plaintiff's testimony that he also had to "lay down after eating to aid digestion and prevent sickness." Pl.'s Reply 8-9; AR 35, 37-38, 356.[14]

As explained below, this Court recommends holding that the ALJ committed no reversible error in formulating Plaintiff's RFC.

#### 1. *Applicable RFC Requirements*

A claimant's RFC is defined as what such an individual "can still do despite his or her limitations." SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *5 (Jul. 2, 1996). "The RFC assessment" performed by the ALJ "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *8.

---

[14] Plaintiff actually asserts that not all of his "testimonial limitations" were included in the ALJ's RFC assessment, but Plaintiff only identifies one such limitation, i.e., a need to lay down after eating. Pl.'s Reply 8 (asserting the ALJ "failed to include all of Plaintiff's testimonial limitations into the RFC including the need to lay down after eating to aid digestion and prevent sickness.")

To make such an assessment, the ALJ must "[1] identify the [claimant's] functional limitations or restrictions and [2] assess his or her work-related abilities on a function-by-function basis," specifically by addressing the claimant's "remaining exertional and nonexertional capacities" to perform work. *Id.* at \*2, \*15. In addressing the claimant's exertional capacities, the ALJ must separately consider the claimant's ability to "perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* at \*15. In addressing the claimant's nonexertional capacities, the ALJ must consider the claimant's physical abilities that are "not reflected in the seven strength demands," the claimant's mental abilities, and all other "abilities affected by impairments:"

> Nonexertional capacity considers all work-related limitations . . . that do not depend on . . . physical strength . . . . It assesses an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision). In addition to these activities, it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes).

*Id.* at \*2, \*16-17; 20 C.F.R. 404.1545(d).

The ALJ is advised that "failure to consider an individual's ability to perform the specific work-related functions *could* be critical to the outcome of a case." SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at \*10 (emphasis added). "The concern is that, without a function-by-function analysis, an ALJ 'may . . . *overlook* limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (emphasis added) (quoting SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at \*11).

An ALJ's failure, however, to fully describe a claimant's ability to perform all "the specific work-related functions" is not, by itself, reversible error—particularly when the ALJ "did not overlook" the functional limitation complained of and the failure "was not critical to the outcome

of the case." *Hendron*, 767 F.3d at 957 (holding that an ALJ's failure to "find explicitly that [claimant] was capable of sitting for six hours during a regular eight-hour work day" was not reversible error because the ALJ nevertheless "did not overlook [claimant's] problems with sitting" and because a failure to make such an explicit finding "was not critical to the outcome of [the] case.") Indeed, in analyzing such "technical omissions in [an] ALJ's reasoning," courts must "exercise common sense," for example, by not needlessly elevating form over substance. *Id.* ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. . . . [W]e cannot insist on technical perfection." (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)) (internal quotation marks omitted) (alternation in original)).

> 2. *Analysis*

Plaintiff alleges reversible error in the ALJ's failure to include an "explicit function-by-function analysis"—particularly of Plaintiff's apparent need to lie down after sitting or eating—when the ALJ formulated Plaintiff's RFC. Pl.'s Mot. 15-16; Pl.'s Reply 8-9. For such an argument to succeed, at least two conditions must be met. First, the ALJ must have indeed failed to include a required "function-by-function assessment" in formulating Plaintiff's RFC. Second, such a failure must have caused the ALJ to "overlook limitations or restrictions that would narrow the ranges and types of work [Plaintiff] may be able to do" and must have been "critical to the outcome of the case." *Hendron*, 767 F.3d at 956-57. As explained below, the Court finds that—even if a particular "function-by-function assessment" was omitted—the ALJ nevertheless did not overlook any such limitation or restriction. The Court therefore recommends holding that the ALJ committed no reversible error in formulating Plaintiff's RFC.

To begin, it is not clear that the ALJ was even required to include the particular "function-by-function assessment" that Plaintiff appears to assert. Plaintiff seems to imply that the ALJ was required to make an explicit finding regarding Plaintiff's claimed need to lie down extensively through the day. *See* Pl.'s Reply 8-9. While the RFC assessment does require the ALJ to "*identify* [Plaintiff's] functional limitations," it nevertheless does not require the ALJ to articulate "on a function-by-function basis" explicit findings on all of Plaintiff's asserted functional limitations (e.g., including an asserted need to lie down). SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *2, *10-11. Thus, in finding that Plaintiff had the ability to work with a particular "sit/stand option," the ALJ was not also required to further state the obvious implication—that Plaintiff's functional limitations did not require him to lie down while at work.

To the extent, however, that the ALJ could have failed to explicitly include a "function-by-function assessment"—albeit one not explicitly identified or articulated by Plaintiff—the ALJ nevertheless did not overlook Plaintiff's asserted need to lie down, or any other "testimonial limitations." For example, the ALJ explicitly discussed Plaintiff's testimony that he needed to "lie down half of the day due to pain and dizziness," that his feet would swell unless he was lying down, and that he could sit for "about an hour, maybe a little bit more" and stand "[m]aybe half an hour or so." AR 18, 33, 37-38. The ALJ also explicitly discussed Dr. Montoya's opinion that Plaintiff's "joint pain and back pain . . . only allow him to walk or stand for 30 minute intervals before changing to a sitting position for 1 to 2 hour [sic] and then lying down for another 1 to 2 hours." AR 18, 356. In addition, the ALJ discussed Plaintiff's gastroparesis—which Plaintiff testified required him to lie down "until [the food] goes down"—and found that this impairment caused no more than "a minimal limitation." AR 18, 35. Finally, the ALJ discussed Plaintiff's

testimony of other apparent functional limitations, including Plaintiff's assertion that he "could not grip things" and "had balance issues." AR 18, 35, 38.

In sum, the ALJ did not "overlook limitations or restrictions that would narrow the ranges and types of work [Plaintiff] may be able to do." *Hendron*, 767 F.3d at 956. Instead, he carefully considered such limitations or restrictions that were asserted by Plaintiff. Thus, while Plaintiff may disagree with how the ALJ *weighed* the evidence of Plaintiff's limitations, he cannot rightly complain that the ALJ *overlooked* such limitations. And any failure by the ALJ to explicitly include a particular "function-by-function assessment"—whether of Plaintiff's purported need to lie down or some other limitation not explicitly identified by Plaintiff—would therefore be nothing more than a harmless "technical omission." *Id.* at 957. Therefore, this Court recommends holding that the ALJ committed no reversible error in formulating Plaintiff's RFC.

## B. ALJ Did Not Err in Weighing Dr. Montoya's Opinion

Plaintiff claims that the ALJ erred in assigning "diminished weight" to the opinion of Plaintiff's treating physician, Dr. Montoya. Pl.'s Mot. 15. Plaintiff argues that the ALJ lacked "good cause" to assign Dr. Montoya's opinion such weight and presents five reasons to support this argument. *Id.* at 15-16. Specifically, he argues that the ALJ lacked "good cause" to discount Dr. Montoya's opinion because the ALJ did not (1) consider Dr. Montoya's "extensive treatment relationship" with Plaintiff, (2) discuss the "length of the treatment relationship and frequency of examination," (3) discuss the portion of Dr. Montoya's opinion that asserts Plaintiff was diagnosed with "chronic back and large joint pain," (4) adequately explain why he gave "diminished weight" to the portion of Dr. Montoya's opinion that asserts Plaintiff's "neuropathy in the abdomen that makes is [sic] digestive track slow and cause pain," or (5) explain how he weighed the portion of Dr. Montoya's opinion that asserts Plaintiff "will have these medical problems lifelong" while "the

underlying causes of diabetes [is treated] with insulin medications." *Id.* at 15-16; AR 356. As explained below, this Court recommends holding that the ALJ did not err in weighing Dr. Montoya's opinion.

    *1. Controlling Legal Standards*

    Unless the ALJ gives a treating physician's medical opinion "controlling weight," the ALJ must *consider* the following six factors when deciding what lesser weight to give to such an opinion: (1) the examining relationship between the medical source and the claimant, (2) the treatment relationship, including its length, nature, and extent as well as the frequency of examination, (3) the degree to which the medical source presents and explains evidence to support a medical opinion, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion is from a specialist and is about an issue related to the medical source's specialty, and (6) other factors that are brought to the ALJ's attention. 20 C.F.R. §§ 404.1527(c), (c)(1)-(6).

    The Tenth Circuit has held, however, that the ALJ is not required to "explicitly discuss" all of the above six factors. *Oldham*, 509 F.3d at 1258 (finding no law "requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion" (citations omitted)); *see also Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (clarifying that the "ALJ is not required to discuss 'every piece of evidence'" (quoting *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007))).

    Under the regulations, the ALJ "[g]enerally . . . give[s] more weight to medical opinions from [a claimant's] treating source." 20 C.F.R. § 404.1527(c)(2). Furthermore, the ALJ is to give such an opinion "controlling weight" if it is (1) an opinion "on the issue(s) of the nature and severity of [a claimant's] impairment(s)," (2) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (3) "not inconsistent with the other substantial evidence in

[the claimant's] case record." *Id.* Regardless, however, of the weight given to such an opinion, if "[t]he ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions," then "[n]othing more [is] required." *Oldham*, 509 F.3d at 1258 (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2) (requiring the ALJ to "give good reasons" for the weight given to such opinions).

### 2. *Analysis*

Plaintiff seeks to show that the ALJ erred in assigning "diminished weight" to Dr. Montoya's opinion by first asserting that the ALJ did not *consider* Dr. Montoya's "extensive treatment relationship" with Plaintiff. Pl.'s Mot. 15. That assertion is factually incorrect. As noted above in Section IV(B)(2), the ALJ not only considered but explicitly discussed *eight* of Plaintiff's visits with Dr. Montoya over a three-year timeframe—specifically from August 2013 (shortly before Plaintiff's alleged disability onset) until November 2016 (shortly before Plaintiff's hearing with the ALJ)—finding that they "generally showed little" or resulted in "unremarkable" findings. Furthermore, this Court is not aware of—and neither does Plaintiff cite to—any rule that would have also required the ALJ to include some sort of formalistic, not to mention superfluous, recitation that he indeed considered this treatment relationship. In fact, just the opposite is true: the ALJ was not required to "explicitly discuss" or even "apply expressly each of the six relevant factors," which includes Plaintiff's treatment relationship with Dr. Montoya. *Oldham*, 509 F.3d at 1258.

Plaintiff's second ground for criticizing how the ALJ weighed Dr. Montoya's opinion is that the ALJ did not *discuss* his treatment relationship with Dr. Montoya. Pl.'s Mot. 15. Specifically, Plaintiff asserts that the ALJ erred by not discussing this relationship in term of its "length" or "the frequency of examination," which are subparts of the treatment relationship factor

that the ALJ must consider when weighing a medical opinion. *Id.*; 20 C.F.R. § 404.1527(c)(2). But as already noted, while the ALJ is required to *consider* "the six relevant factors," he is not required to "explicitly discuss" or "apply expressly" each of these factors. *Oldham*, 509 F.3d at 1258. Thus—although the ALJ *did* discuss eight different visits with Dr. Montoya over a three-year timeframe—the question of whether the ALJ could have more "explicitly discuss[ed]" either the length of that relationship or the frequency of those examinations is of no legal (or practical) consequence.

Plaintiff's final three grounds for criticizing the ALJ's decision not to give greater weight to Dr. Montoya's opinion are all based on an erroneous assumption. Specifically, in asserting that the ALJ did not adequately *discuss* three different portions of Dr. Montoya's one-page opinion (i.e., comments about Plaintiff's "chronic back and large joint pain," "neuropathy in his abdomen," and "hav[ing] these medical problems lifelong") Plaintiff assumes—without citing any law or regulatory guidance—that the ALJ was in fact required to separately discuss each portion (or at least these three portions) of that opinion. Pl.'s Mot. 15-16; AR 356. Plaintiff further assumes that unless the ALJ provided such discussions, the ALJ could not have assigned anything less than "substantial weight" to Dr. Montoya's opinion. *Id.*[15]

The ALJ, however, was not required to discuss each portion of Dr. Montoya's opinion in order to give it a lesser weight. The applicable regulations permit the ALJ to give lesser weight, i.e., something less than "controlling weight," to a treating physician's opinion regarding a claimant's impairment if at least one of two conditions are met. 20 C.F.R. § 404.1527(c)(2).

---

[15] Aside from being *legally* erroneous, Plaintiff's assertions are not, as a *factual* matter, completely accurate. For example, the ALJ did in fact discuss the portion of Dr. Montoya's opinion regarding Plaintiff's "joint and back pain." AR 20, 356; *see also* AR 16-17. And although the ALJ did not specifically cite to the sentence in Dr. Montoya's opinion regarding abdominal neuropathy affecting Plaintiff's digestive tract (i.e., gastroparesis), he did discuss Plaintiff's gastroparesis and found that this condition was not severe because Plaintiff had no "consistent symptoms." AR 16.

Specifically, if the opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the claimant's] case record," then the ALJ is not required to give it "controlling weight." *Id.* And in deciding what lesser weight to give such an opinion, the ALJ is required to consider, but need not "explicitly discuss," the six factors mentioned above. § 404.1527(c); *Oldham*, 509 F.3d at 1258. As long as the "ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions," then "[n]othing more [was] required." *Oldham*, 509 F.3d at 1258. Thus, if the ALJ was justified in giving some lesser weight to Dr. Montoya's opinion and, after considering the required factors, provided "good reasons" for the "diminished weight" he gave to that opinion, then "[n]othing more [was] required." *Id.*

Here, the ALJ was not required to give Dr. Montoya's opinion "controlling weight" because it was not only inconsistent with the other substantial evidence, but also because it was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2). And in describing this inconsistency and lack of support, the ALJ provided "good reasons" for assigning that opinion "diminished weight." For example, the ALJ found that Dr. Montoya's opinion was "somewhat inconsistent with the treating records, which fail[ed] to mention *any* problems with numbness in [Plaintiff's] hands and feet." AR 20 (emphasis added). In addition, the ALJ found that—contrary to Dr. Montoya's opinion that Plaintiff's "joint and back pain" was so severe that it prevented him from working—the record showed no diagnosis of "*any* impairment affecting the joints or back" and "contained no imaging." *Id.* (emphasis added).[16]

---

[16] *See also supra*, note 8 (noting that aside from Dr. Montoya's opinion—which claimed such a diagnosis had previously occurred—no records showed any actual diagnosis relating to joint or back pain, aside from some pain attributable to diabetes).

In sum, the ALJ was not required to assign "controlling weight" to Dr. Montoya's opinion and, in addition to considering the required factors,[17] the ALJ articulated "good reasons" for why he assigned that opinion "diminished weight." Therefore, "[n]othing more [was] required." *Oldham*, 509 F.3d at 1258. Consequently, this Court recommends holding that the ALJ did not err in weighing Dr. Montoya's opinion.

## C. ALJ Did Not Err in Considering Plaintiff's Symptoms

Plaintiff next claims that the ALJ erred by not "properly consider[ing]" his testimony about his symptoms. Pl.'s Mot. 16. In support of this claim, Plaintiff quotes the following statement by the ALJ: "In all, however, the claimant's alleged symptoms and limitations are not consistent with the objective medical evidence." *Id.* Plaintiff implies that the ALJ therefore only relied on "objective medical evidence"—and nothing more—in discounting Plaintiff's testimony. *Id.* Consequently, Plaintiff argues that the ALJ failed to comply with SSR 16-3p by not considering other evidence. *Id.* As explained below, this Court disagrees.

### 1. *Controlling Legal Standards*

The regulations require the ALJ to "consider all of the evidence." 20 C.F.R. § 404.1529(c)(3). They state that a claimant's "statements about [his or her] pain or other symptoms will not alone establish" a disability, but they also clarify that a claimant's statements about the "intensity, persistence and limiting effects" of his or her symptoms cannot be rejected "solely because the available objective medical evidence does not substantiate [his or her] statements." §§ 404.1529(a), (c)(2); *see also* SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, at *12-13 (a claimant's statements "about the intensity, persistence, and limiting effects of

---

[17] Of the "six relevant factors" set forth in 20 C.F.R. § 404.1527(c)(1)-(6), Plaintiff only alleges that one factor (Plaintiff's treatment relationship with Dr. Montoya) was inadequately considered. Pl.'s Mot. 15. But, as discussed in this section, the ALJ did discuss that factor. Furthermore, the record shows that the ALJ also considered the remaining five factors. *See* AR 17-20.

symptoms" cannot be disregarded "solely because the objective medical evidence does not substantiate" those statements). These regulations, however, do not require the ALJ to believe, adopt, or assign a particular weight to a claimant's statements or testimony. *See* 20 C.F.R. § 404.1529. They do, however, prevent an ALJ from summarily rejecting or disregarding such statements from Plaintiff *solely* because they are not supported by "objective medical evidence." § 404.1529(c)(2).

The "objective medical evidence" referred to in SSR 16-3p and 20 C.F.R. § 404.1529(c)(2) has a relatively narrow definition, but the "other evidence" that an ALJ may consider is defined rather broadly. For instance, "*objective* medical evidence" is defined as "evidence obtained from the application of *medically acceptable* clinical and laboratory *diagnostic techniques*." § 404.1529(c)(2) (emphasis added). And "other evidence" includes "*any* other information [a claimant] may submit." *Id.*; SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, at *13, *15. Furthermore, "other evidence" also includes information from "medical sources," which in turn includes medical "opinions" (both from treating and non-treating sources, such as state agency physicians), "prognoses," "medical reports," and "other information concerning the intensity, persistence, and limiting effects of an individual's symptoms." *Id.* at *15-16.

   *2. Analysis*

   The ALJ did not err in considering Plaintiff's testimony about his symptoms. Although the ALJ stated that Plaintiff's "symptoms and limitations [were] not consistent with the objective medical evidence," the ALJ nevertheless considered "other evidence."

   To begin, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and *other evidence* in the record." AR 19 (emphasis added). In addition to simply stating that he

considered "other evidence"—or stating that he considered "all the evidence" and "the entire record" before him—there is also ample evidence that the ALJ indeed *considered* such "other evidence." AR 14, 16, 19. For example, in evaluating the "intensity, persistence, and limiting effects of [Plaintiff's] symptoms" in his RFC assessment, the ALJ considered the "other information" of Plaintiff's lack of complaints regarding his symptoms. AR 19 (finding that "[t]he record was devoid of any complaints or findings of numbness in his extremities"); AR 20 (finding that "complaints in the record as to [Plaintiff's] symptoms [resulting from diabetes, hypertension, and obesity] were limited").

In addition, in this same RFC assessment, the ALJ reviewed other information and statements from Plaintiff (e.g., his receipt of unemployment benefits after he was fired and that he had two adopted children). AR 18. Furthermore, the ALJ also considered the opinions of two state agency physicians who found that Plaintiff had little or no limitations. AR 18, 20. Although the ALJ did not, for example, specifically label these opinions as "other evidence," he did give these opinions some weight (i.e., "diminished weight") in formulating an RFC that was contrary to "[Plaintiff's] statements about the intensity, persistence, and limiting effects of [his] symptoms." AR 19-20.

In sum, in formulating an RFC that was contrary to Plaintiff's own statements about his symptoms, the ALJ did not disregard those statements *solely* because of evidence from "clinical and laboratory diagnostic techniques"—i.e., "objective medical evidence." 20 C.F.R. § 404.1529(c)(2). Consequently, this Court recommends holding that the ALJ did not err in considering Plaintiff's statements about his symptoms.

**D. ALJ Did Not Err in Considering Plaintiff's Obesity**

Finally, Plaintiff claims that the ALJ erred by not "properly assess[ing]" Plaintiff's obesity. Pl.'s Mot 16. He argues that the ALJ failed to comply with SSR 02-01p by not considering how Plaintiff's obesity affected his ability to move in the workplace and his diabetes. *Id.* Plaintiff thus implicitly argues that his obesity, either alone or in combination with other conditions, prevents him from performing the particular "light work" articulated by the ALJ. As explained below, this Court disagrees.

*1. Controlling Legal Standards*

The above ruling, SSR 02-01p, "provides guidance on how an ALJ should evaluate a claimant's obesity." *Johnson v. Comm'r, SSA*, No. 18-5058, 2019 U.S. App. LEXIS 6320, 2019 WL 994516, *10 (10th Cir. 2019) (unpublished). "It does not mandate any additional restrictions or a finding of disability; rather, it provides that in assessing RFC, an ALJ should *consider* 'any functional limitations resulting from the [claimant's] obesity,' in addition to any limitations resulting from any other impairments." *Id.* (quoting SSR, 02-01p, 2002 SSR LEXIS 1, 2002 WL 34686281, *19 (Sept. 12, 2002)) (emphasis added).[18]

And while the ALJ is required to *consider* these possible effects of obesity, the ALJ is not required to explicitly *discuss* every possible connection, or lack thereof, between obesity and each "functional limitation" or "other impairment." *Smith v. Colvin*, 625 Fed. Appx. 896 (10th Cir. 2015) (unpublished) (holding that "for each piece of evidence the ALJ discussed in formulating [the claimant's] RFC," the ALJ was not "also required to note the absence of any evidence that

---

[18] *See also DeWitt v. Astrue*, 381 Fed. Appx. 782, 785-86 (10th Cir. 2010) (unpublished) (noting that the ALJ cannot make "assumptions" about the "effect of obesity combined with other impairments" but rather must give "adequate consideration" to such effects (quoting SSR, 02-01p, 2002 SSR LEXIS 1, 2002 WL 34686281, *15; *Hamby v. Astrue*, 260 F. App'x 108, 112 (10th Cir. 2008) (unpublished)) (citing *Baker v. Barnhart*, 84 F. App'x 10, 14 (10th Cir. 2003) (unpublished)).

her obesity resulted in additional *functional limitations* or exacerbated any *other impairment*" (emphasis added)). Instead, "[a]s with any other impairment," the ALJ "will explain how [he or she] reached [his or her] conclusions" regarding obesity's possible effects on a claimant's limitations. SSR, 02-01p, 2002 SSR LEXIS 1, 2002 WL 34686281, *18. And the ALJ may sufficiently *discuss* these "possible ramifications" of obesity through addressing a claimant's *other* related "impairment[s]" or "medical conditions." *Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) (holding that the ALJ sufficiently "discuss[ed] possible ramifications of [a claimant's] obesity" through his discussion of *other* impairments, including claimant's "lack of marked arthritic pain . . . or musculoskeletal impairment"); *Razo v. Colvin*, 663 Fed. Appx. 710, 716 (10th Cir. 2016) (unpublished) (holding that "[t]he ramifications of obesity [were] subsumed within the discussion of [claimant's] *other* medical conditions" (emphasis added)).

    *2. Analysis*

In concluding in the RFC assessment that Plaintiff was nevertheless able to perform light work (with additional limitations, such as a "sit/stand option"), the ALJ explicitly discussed Plaintiff's impairments, including obesity, and their effect on his asserted limitations. To begin, the ALJ found that Plaintiff had three severe impairments: obesity, hypertension, and type 2 diabetes. AR 16. And it is well understood that obesity "increases an individual's chances" and "often complicates" other health impairments—such as type 2 diabetes and hypertension. SSR, 02-01p, 2002 SSR LEXIS 1, 2002 WL 34686281, *6. In the RFC assessment, the ALJ found that although Plaintiff's diabetes and hypertension were "in various stages of control, the record typically noted [Plaintiff] was *asymptomatic*, and examinations *generally showed little*." AR 19 (emphasis added). Thus, although the ALJ did not specifically state to what extent obesity could have caused or exacerbated these two impairments, "the ramifications of obesity [were] subsumed

within [this] discussion of [Plaintiff's] other medical conditions," i.e., diabetes and hypertension—Plaintiff's only other severe impairments. *Razo*, 663 Fed. Appx. at 716.

The ALJ considered and evaluated the effects of obesity in additional ways. For example, immediately after his discussion of diabetes and hypertension, the ALJ noted how Plaintiff's obesity was "supported by the record," but nevertheless reasserted his conclusion that Plaintiff's "alleged symptoms and limitations" were simply not consistent with the evidence. *Id.* And he later reiterated that—although Plaintiff had "diabetes [], hypertension, and obesity"—the "objective findings were minimal, and complaints in the record as to his symptoms were limited." AR 20. In addition, the ALJ also noted Plaintiff's specific BMI, and how it increased over time from 43 in late 2013, to 43.9 in March 2014, and to approximately 46 in November 2016. AR 18-19. Furthermore, the ALJ considered how one state agency physician found that Plaintiff had no severe impairments or significant limitations and how the other—who did find Plaintiff's obesity to be a severe impairment—found that Plaintiff was essentially only capable of "medium work." AR 20, 54-55, 62-63. The ALJ nevertheless explained that he gave both opinions "diminished weight" because they were, among other things, inconsistent with "evidence that suggested more limitations," particularly evidence of "hypertension and diabetes." AR 20.

Although the ALJ acknowledged evaluating the "combined effects of obesity with musculoskeletal impairments," 20 C.F.R., Subpt. P. App. 1, § 1.00(Q); AR 17, he nevertheless found that Plaintiff's alleged "joint and back pain" was not severe. AR 16. Specifically, he reasoned that such an impairment could not be deemed severe because it was not a "*medically determinable* impairment." AR 16-17 (emphasis added).[19] Aside from "pain attributable to

---

[19] A "medically determinable impairment" must be founded upon "medically acceptable clinical or laboratory diagnostic techniques," 20 C.F.R. § 404.1529(b), and not, as the ALJ observed, solely on Plaintiff's *allegations* of pain symptoms. AR 16.

diabetes," the ALJ found that the record simply contained no "diagnosis relating to joint or back pain." AR 16-17.[20] Similarly, the ALJ found no evidence from "an acceptable medical source" that could establish a medically determinable impairment that could reasonably be expected to produce joint and back pain. *Id.* But the ALJ nevertheless still considered both Plaintiff's testimony about his back and joint pain and Dr. Montoya's opinion regarding such pain in concluding that Plaintiff was able to perform "light work" with a sit/stand option. AR 17-18, 20. And in doing so the ALJ explicitly noted the *lack* of evidence regarding such pain. AR 20. Thus, like the ALJ in *Howard*, the ALJ here "did discuss possible ramifications of [Plaintiff's] obesity when he addressed the lack of [back and joint pain] pain." *Howard*, 379 F.3d at 948.

Given the evidence discussed above—particularly the lack of significant symptoms—this Court also concludes that "the factual record does not support [Plaintiff's *implied*] position that [his] obesity, either alone or in combination with other conditions, precludes [him] from performing light work," with the additional limitations described above. *Id.* Plaintiff does not explicitly argue or even discuss how his obesity, either alone or otherwise, would have prevented him from performing such "light work." *See Howard*, 379 F.3d at 948 (noting Plaintiff's failure to "discuss or cite to medical evidence" that showed her obesity, "either alone or in combination with other conditions, preclude[d] her from performing light work" supported upholding the ALJ's RFC finding). Substantial evidence, however, does support such a finding of "light work"—as demonstrated from the ALJ's review of Plaintiff's obesity, Plaintiff's impairments (including

---

[20] Plaintiff notes that obesity can contribute to joint and back pain and argues that, by finding that "the record does not show that any impairment affecting the joints or back has been *diagnosed,*" the ALJ therefore failed to consider obesity's potential effect on such pain. AR 20 (emphasis added); Pl.'s Reply 9. The ALJ, however, clearly considered Plaintiff's obesity and all of Plaintiff's "alleged symptoms and limitations," but nonetheless found such allegations to be inconsistent with the evidence. AR 19. Furthermore, while obesity may—or may not—have had some causal or compounding effect on Plaintiff's joint or back pain, any such relationship was never medically established, and no *diagnosis* of any impairment (outside of pain attributable to diabetes) showed any effects on Plaintiff's joint or back pain. AR 1-356.

diabetes and hypertension), Plaintiff's alleged symptoms (including pain), Plaintiff's lack of complaints, the objective medical evidence, the opinion evidence, and "the *entire* record." AR 17-20 (emphasis added). And an ALJ findings "as to *any* fact, if supported by substantial evidence, *shall* be conclusive." 42 U.S.C. § 405(g) (emphasis added).

In sum, the ALJ adequately *considered* Plaintiff's obesity and its possible effect on Plaintiff's limitations, and the ALJ sufficiently *discussed* the "possible ramifications" of Plaintiff's obesity. And substantial evidence supports the ALJ's resulting finding of "light work." Consequently, this Court recommends holding that the ALJ did not err in his consideration or discussion of Plaintiff's obesity and that his RFC finding of "light work" is supported by substantial evidence.

## VI. CONCLUSION

For the foregoing reasons, the Court finds that the ALJ applied the correct legal standards and that his findings and decision were supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Motion be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the Commissioner's final decision be **AFFIRMED** and that the instant cause be **DISMISSED WITH PREJUDICE**.

**IT IS SO RECOMMENDED**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.